**Affirmed and Opinion Filed April 6, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00064-CR

**TASHIMA NICOLE EVERHART, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F13-00363-S**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

Following a bench trial, Tashima Nicole Everhart was convicted of fraudulent use or possession of fifty or more items of identifying information, and the trial court sentenced her to twenty-five years in prison. In one issue, appellant contends the evidence is insufficient to establish the offense is a first-degree felony. We affirm.

Bank of America received a tip on its ethics hotline that one of its employees, Erica Tiller, was stealing routing, account, and check numbers and selling them to people to use for fraudulent purposes. As proof, the caller faxed lists of the account and routing numbers. The bank traced the caller's phone number to appellant. In the meantime, Detective William Hutson of the Cedar Hill Police Department was investigating a case in which several counterfeit checks were confiscated from a suspect. During his investigation, he began contacting the banks to see

if any of the checks had been used fraudulently and met with Bank of America's fraud investigator. As a result of that meeting, Hutson began an investigation into appellant and learned she was on probation and also had outstanding traffic warrants. He contacted appellant's probation officer and learned the date of appellant's next scheduled meeting. Hutson arrived at the meeting, told appellant why he was there, and asked for identification. Appellant gave him a driver's license with her name, picture, and date of birth, but the driver's license number belonged to someone else. After confirming the outstanding warrants, Hutson arrested appellant. During a search of her purse, he found a sheet of paper containing a handwritten list of more than fifty Texas driver's license numbers.

Hutson ran the numbers through the Texas Department of Public Safety database and printed a list of the names associated with each number. He noticed that in many instances, the numbers belonged to different individuals with similar or identical first and last names. For example, there were twelve individuals named "Mary Whitehead," eight named "Mary McCormick," and eight named "Linda Sims." Hutson also found receipts for purchases made by checks, some showing "Check Declined" and others that Hutson later determined involved fraudulent activity. He also found checks in the name of Linda Sims with different routing and account numbers and a checkbook in appellant's name that had handwritten routing and account numbers. Hutson obtained warrants to search Hutson's vehicle and phone. A search of Hutson's vehicle uncovered mail belonging to other individuals, a driver's license in the name of Linda Sims with appellant's picture, various receipts, and some checks. A search of her phone revealed text messages between her and Tiller, including one with account and routing numbers.

Four witnesses, whose driver's license numbers were found in appellant's possession, testified appellant did not have their permission to have their numbers.

Appellant testified she was the person who called the bank's hotline. She said she and Tiller were former friends, and she had obtained banking information from Tiller in the past and ended up on probation for "forgery and stuff." In the fall of 2011, appellant started receiving banking information from Tiller again. After a couple of months, she decided to report Tiller because she believed Tiller had done some things "behind her back." Appellant claimed her only purpose in continuing to obtain information from Tiller was so she could turn Tiller in. Appellant said Tiller also sent her the Texas driver's license numbers found in her possession and that she planned to turn that information in as well but was arrested before she had the chance. She acknowledged telling the police she obtained the numbers from someone else and also said she never told police she was gathering banking and other identifying numbers so that she could turn Tiller in. She admitted she did not have consent to possess any of the driver's license numbers found in her possession but denied any fraudulent intent. Finally, appellant admitted that while this charge was pending, she was arrested in Mississippi. She said she and a friend were passing bad checks using other individuals' routing, account, and driver's license numbers, explaining that she needed to "make some money."

In reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits fraudulent use or possession of identifying information if she obtains, possesses, transfers, or uses identifying information of another person without the other person's consent and with intent to harm or defraud another. TEX. PENAL CODE ANN. § 32.51(b)(1) (West

–3–

Supp. 2014). Consent in this context means assent in fact, whether express or apparent. *Id*. § 1.07(a)(11); *Ngetich v. State*, No. 05-12-00734-CR, 2013 WL 6795896, at *2 (Tex. App.—Dallas Dec. 20, 2013, no pet.). Assent in fact means there must be an actual or real agreement after thoughtful consideration. *Blair v. State,* 398 S.W.3d 220, 229 (Tex. Crim. App. 2013); *Ngetich*, 2013 WL 6795896, at *2. Apparent consent means assent in fact that, while not communicated expressly, is no less clear and manifest to the understanding for not having been explicitly verbalized. *Blair*, 398 S.W.3d at 229; *Ngetich*, 2013 WL 6795896, at *2. When a person possesses the identifying information of three or more individuals, the law presumes the person has the intent to harm or defraud another. *Id*. at § 32.51(b-1)(1). An offense under section 32.51 is a state jail felony if the number of items obtained, possessed, transferred, or used is less than five; it is a first-degree felony if the number of items is fifty or more. *See id*. at § 32.51(c)(1), (4).

Appellant contends the trial court erred in finding she committed a first-degree felony because the evidence at trial was sufficient to support only a state jail felony. Specifically, she argues the State had to prove she possessed fifty items or more without consent, but the State presented the testimony of only three people "who affirmed that [a]ppellant had [their] information without their consent."[1] Thus, she asserts the State proved possession of only three items, which is a state jail felony. After reviewing the record, we disagree.

When cross-examining appellant, the State's questioning primarily focused on appellant's intent in obtaining the driver's license numbers. The prosecutor elicited testimony from appellant that she initially told police she did not know Tiller, did not call the bank, that she got the driver's license numbers from someone named Michael, and was going to use them to rent an apartment. Appellant was asked to explain why she had a driver's license with her picture and

---

[1] Actually, four witnesses testified appellant did not have their consent to possess their Texas driver's licenses.

the information of a "Linda Sims," and appellant replied she had it so she could "play it off" with Tiller and continue getting information. The prosecution also asked appellant about numbers found in her checkbook, and appellant said those numbers were sent to the bank although she could not locate them in the documents produced by the bank and admitted into evidence. At that point, the following occurred:

[PROSECUTOR]: So any - - and the routing and checking numbers that are in this checkbook - - in the book, are for the sole purpose of getting Erica Tiller caught?

[APPELLANT]: Uh-huh.

[PROSECUTOR]: Okay. Okay. So you'd agree with me that you didn't have consent of any of these 87 people to be in possession of their driver's license numbers, correct?

[APPELLANT]: No, ma'am.

* * *

[PROSECUTOR]: And so it is your testimony that you're in possession of all these numbers, right? And that nobody gave you permission to be in possession of these numbers - - the owners of the driver's license numbers didn't give you permission?

[APPELLANT]: No, ma'am.

[PROSECUTOR]: So you're only contention here is whether you had intended to harm anybody by doing it, correct?

[APPELLANT]: Correct.

Putting appellant's responses to the questions in context of her surrounding testimony, it would be reasonable for the trial court to conclude appellant was agreeing with the prosecutor that she did not have permission to have the numbers. Such an interpretation is supported by appellant's testimony that her "only contention" was that she did not intend to harm anyone. Moreover, appellant testified she obtained the list of driver's license numbers from Tiller, who appellant said stole them and either sold or gave them to her. Four of the people whose names were on the list testified they did not know appellant and she did not have their consent to

possess their numbers. Given the circumstances under which appellant obtained the numbers, coupled with the four witnesses' testimony that she did not have their permission, the trial court could have reasonably inferred that the owners of the remaining numbers likewise did not give appellant consent to possess their driver's licenses. *See Ngetich*, 2013 WL 6795896, at *2.

Viewing the evidence in the light most favorable to the trial court's verdict, we conclude there was sufficient evidence to establish that appellant possessed fifty or more items of identifying information without consent, thus making the offense a first-degree felony. We overrule the sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47.2(b)
140064F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TASHIMA NICOLE EVERHART,
Appellant

No. 05-14-00064-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1300363-S.
Opinion delivered by Justice Francis;
Justices Lang-Miers and Whitehill
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered April 6, 2015.